William C. Jeanney, Esq.
Nevada State Bar No. 01235
BRADLEY, DRENDEL & JEANNEY
P.O. Box 1987
Reno, NV  89505
Telephone No. (775) 335-9999
Facsimile No.  (775) 335-9993
*Attorneys for Movants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MEDCHOICE RISK RETENTION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT G. RAND, M.D., and RAND FAMILY CARE LLC, <br><br> Defendants. <br> _____ / | Case No. 3:16-cv-00418-MMD-VPC |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

COME NOW Movants, Cyndi Papez Yenick and Edward J. Yenick, Jr., as Special Administrators of the Estate of Michael Edward Yenick, deceased; Cyndi Papez Yenick, individually, as mother and heir of Michael Edward Yenick; Edward J. Yenick, Jr., individually, as father and heir of Michael Edward Yenick, and hereby reply to "Medchoice Risk Retention Group's Opposition to Motion to Intervene" and "Defendant/Counterclaimants Robert G. Rand, M.D., and Rand Family Care, LLC's Opposition to the Yenick Family's Motion to Intervene," filed herein on September 6, 2016 and August 31, 2016, respectively.[1]

This reply is based on the accompanying memorandum of points and authorities, together

---

[1] Inasmuch as Rand's opposition cites no relevant authority and fails to set forth any cogent arguments not already made in Medchoice's opposition, the primary focus of this reply will be the latter opposition.

1

1   with all other matters properly of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I. MEDCHOICE SKEWS THE STANDARD FOR PERMISSIVE INTERVENTION, ARGUING THAT RULE 24(b) REQUIRES A "COMMON ISSUE OF LAW *AND* FACT," WHEN THE RULE'S OPERATIVE WORD IS ACTUALLY "*OR*"

In its first argument, Medchoice asserts that, "no permissive intervention should be allowed because no common issue of law *and* fact exists." Opposition (#18), p. 3, lns. 18-19; capitalization of initial letters, as well as boldface and underlining, omitted; emphasis added. Medchoice then characterizes the Yenicks' argument, throwing quotation marks around the phrase "common issue of law *and* fact," as if to attribute the use of the conjunctive to the Yenicks. However, the Court will search the Yenicks' motion in vain for any suggestion that the relevant standard is anything other than a common issue of law *or* fact. Medchoice muddies the water further by then citing *Liberty Mutual Insurance Co. v. Treesdale Inc.*, 419 F.3d 216 (3rd Cir. 2005), flag-citing to page 227 of the opinion and interjecting ambiguity as to whether it was attributing the quoted phrase to the Yenicks or to the Third Circuit. Opposition (#18), p. 3, lns. 22-23. It turns out that the court in *Treesdale* did, in fact, use the phrase as quoted by Medchoice, but it used the conjunctive "and" only once in the opinion and, in this single instance, it was paraphrasing the movant's argument. Returned to its context, the language seized upon by Medchoice reads as follows:

> Nevertheless, Appellants claim that their personal injury actions against PMP have a common issue of law *and* fact with PMP in the declaratory judgment action, i.e., they and PMP "all seek a determination of whether an asbestos claim in a suit against PMP may recover on that claim, through the Liberty Mutual Policies." Appellants' Br. at 30. We disagree.

*Id.* at 227; emphasis added. Everywhere else in its analysis of permissive intervention, the court used the disjunctive "or," as does Fed.R.Civ.P. 24(b)(1)(B). *See id.*, at 227 (quoting the rule); 227 (describing the district court's decision); and 228 (stating the general rule, as quoted in the Yenicks' motion).

We are not merely nitpicking. By pretending that Rule 24 requires both a common issue of law *and* fact, Medchoice is able to acknowledge the existence of common questions of fact, but attempt to diminish their significance for purposes of the opposition. Medchoice argues as follows:

>The Yenicks attempt to distinguish *Treesdale* by arguing that the circumstances Rand failed to disclose or misrepresented (according to MedChoice's rescission claim) are the same facts for which the Yenicks seek to hold Rand responsible in the underlying action. But the presence of the Yenicks' claim in this action is for an entirely different purpose in this case; it does not present a *common* issue of fact *and* law.

Opposition, p. 4, lns. 14-18; emphasis supplied in part. This argument suggests, contrary to the plain meaning of Rule 24(b)(1)(B), that the parties must have common *legal interests* in establishing the existence of the *common facts*. Meanwhile, Medchoice cites no relevant legal authority in support of its novel interpretation of Rule 24(b)(1)(B).

Medchoice does cite *Medical Protective Company v. Pang*, 2006 WL 1544192 (D.Ariz., June 1, 2006), as an example of a case in which a personal injury claimant's motion for permissive intervention into an insurance company's declaratory relief/rescission action was denied. However, the decision is inapposite and its citation misses the point. In *Pang*, the medical malpractice action was based on the doctor's implant of an allegedly defective medical device, an artificial aortic valve. The insurance company's action was based on the physician's failure to disclose a records request when applying for a retroactive increase in coverage. Accordingly, there were no common questions of fact in the two actions under consideration in *Pang*.

In the instant case, however, the parties agree that there are common questions of fact. It is plain that the facts alleged by Medchoice to support its claim that it is entitled to rescind the policy are the same facts that support the Yenick's claims against Rand. Thus, in both actions precisely the same facts will be subject to extensive discovery.

II. **WHILE MAKING ITS CLAIM THAT COMMON QUESTIONS OF FACT ARE INSUFFICIENT TO WARRANT PERMISSIVE INTERVENTION, MEDCHOICE ADMITS, AS IT MUST, THE EXISTENCE OF SUCH FACTS**

As just pointed out, in the instant case Medchoice has admitted that there are common questions of fact. It can hardly do otherwise. In its complaint, Medchoice incorporates essentially all of the Yenick's factual allegations as factual support for its own claims. For example, in paragraph 2 of its complaint, Medchoice alleges, in relevant part, the following:

>[A]ccording to the Yenick Lawsuit, prior to Mr. Yenick's death, Dr. Rand was warned by both Michael Yenick's mother and another physician that Mr. Yenick had a history of oxycodone and alcohol abuse and that they were concerned about Dr. Rand's continued prescribing of narcotic medications to Mr. Yenick.

3

Complaint for Rescission or, in the Alternative, for Declaratory Judgment (#1), p. 2. Later in the complaint, Medchoice includes other factual allegations that are clearly common to the Yenicks' own factual allegations:

> 13. On September 30, 2015, Dr. Rand saw Mr. Yenick and re-filled an oxycodone prescription for 180 tablets of 30mg tablets of oxycodone.
>
> 14. On October 2, 2015, Mr. Yenick died from acute alcohol and oxycodone intoxication. According to the Yenick Lawsuit, Mr. Yenick was 33 years old at the time of his death and had been a patient of Dr. Rand's since approximately June 2014. According to the Yenick Lawsuit, prior to Mr. Yenick's death, another physician had contacted Dr. Rand in [sic] to express concern about Mr. Yenick's history of oxycodone abuse and treatment, and on September 22, 2015, Mr. Yenick's mother had contacted Dr. Rand to express concern about Mr. Yenick's heavy alcohol use and Dr. Rand's continued prescribing of oxycodone to Mr. Yenick.

*Id.* at p. 4.

The common facts continue to accumulate with Medchoice's extensive reliance on the factual allegations of the Yenicks' claims:

> 35. The Yenick Lawsuit alleges causes of action for (I) medical negligence resulting in wrongful death; (II) deceptive trade practices; (III) negligent misrepresentation; and (IV) neglect of a vulnerable person.
>
> 36. The Yenick Lawsuit alleges that "Plaintiff's Decedent [Michael Yenick] consulted with Defendants [Rand] for the purpose of obtaining consultation and diagnoses and medical treatment and prescriptions." Ex. G, at ¶ 8.
>
> 37. The Yenick Lawsuit alleges that Rand "knowing [sic] engag[ed] in practices and procedures . . . which involved the prescribing excessive dosages of narcotics, and which created a foreseeable risk of overdose, life threatening medical risk and hazards and/or death constitut[ing] malpractice, [and] fraudulent concealment[.]" Ex, G at ¶ 19.
>
> 38. The Yenick Lawsuit further alleges that Rand's conduct constituted "oppression, fraud or malice . . . warranting the imposition of punitive damages[.]" Ex. G at ¶¶ 22, 34, 40.
>
> 39. In the affidavit of Staniford Helm, M.D., attached to the Complaint filed in the Yenick Lawsuit, Dr. Helm states that '[o]n September 17, 2014, Dr. Bertalmio called Dr. Rand telling him of Mr. Yenick's difficulty with opioids, alcohol and other substances and the need for detoxification[,] . . . [and] Dr. Rand continue [sic] to provide oxycodone, increasing it to 20 mg #180 . . . December 18, 2014." Helm Declaration, Exhibit 1 to Ex. G at 2.
>
> 40. Dr. Helm also states that:
>
>> On September 22, 2015, Michael Yenick's mother, Cyndi Yenick, had a telephone conversation with Dr. Rand in which she expressed her concern that Dr. Rand was prescribing oxycodone to her son who had a history of oxycodone dependence which required rehabilitation and detoxification and

>that he was currently being prescribed oxycodone while he was excessively using alcohol.
>
>*Id.*
>
>41.   Dr. Helm states that "On September 30, 2015, . . . Dr. Rand increased the oxycodone prescription to oxycodone 30 mg #6/day, or #180 tablets." *Id.* at 3.
>
>42.   Dr. Helms states that "Mr. Yenick was found dead on October 2, 2015. The cause of death was combined alcohol and oxycodone intoxication . . . [Mr. Yenick] was consuming the prescribed dosage of oxycodone while using alcohol, leading directly to his death." *Id.*

Complaint (#1), pp.8-9.

### III. GIVEN THE UNDENIABLE EXISTENCE OF COMMON FACTUAL ISSUES, IT IS RESPECTFULLY SUBMITTED THAT THE COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW THE YENICKS TO INTERVENE

From the foregoing, it is evident that Medchoice will be conducting discovery at to the Yenicks' factual allegations, to and including taking the Yenicks' depositions and the deposition of Drs. Helm and Bertalmio. Dr. Helm is one of Yenick's retained experts. The Yenicks have a concrete interest in protecting their rights regarding discovery in the federal action, which could affect the merits of their state malpractice action. It would be grossly unreasonable to deny the Yenicks the right to have their counsel participate in this discovery, which could impact th merits of their own case against Rand. At the same time, it makes no sense to subject the witnesses to multiple depositions on the same subject matter. This is precisely the kind of case in which leave to intervene should be granted.

### IV. BECAUSE THE YENICK'S DO NOT. BY INTERVENING, SEEK TO LITIGATE THE MERITS OF THEIR CLAIMS AGAINST DR. RAND, THERE IS NO NEED TO ESTABLISH AN INDEPENDENT BASIS FOR FEDERAL JURISDICTION

In several places in its Opposition, Medchoice feigns uncertainty as to the Yenicks' purpose in intervening. For example, in its introductory paragraph, Medchoice summarizes a portion of its argument as follows:

>Third, to the extent the Yenicks seek to position themselves in opposition to Rand, this Court lacks jurisdiction to allow the intervention. Fourth, the Yenicks have not filed the required proposed pleading in intervention, meaning their Motion does not sufficiently inform [*sic*] parties of the intended basis of intervention.

Opposition (#18), p. 2, lns. 5-9. Cursory elaboration of these assertions occurs on pages 6 and 7 of the opposition.

5

1 | As Medchoice's own authority explains, the failure to file a proposed pleading is excused where the motion to intervene adequately informs the parties of the movant's purpose in seeking intervention. *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion."). Here, the Yenicks' purpose is self-evident. It is also explicitly stated that their purpose in intervening is to supply "the motivation [and] resources necessary to resist Medchoice's lawsuit." Motion (#10), p. 2. In these circumstances, it should be unnecessary to file a proposed answer in intervention. Nevertheless, in an abundance of caution, the Yenick's proposed answer in intervention is annexed hereto as Exhibit 1.

Equally disingenuous is Medchoice's false supposition that the Yenicks need to assert an independent basis for federal jurisdiction if they "seek to position themselves in opposition to Rand." They do not. And where an party seeking intervention is not attempting to litigate the merits of his or her own claim, no independent basis for jurisdiction is necessary. *Beckman*, 966 F.2d at 473-74.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that the Motion to Intervene should be granted.

Dated this 20th day of September, 2016.

BRADLEY, DRENDEL & JEANNEY

By_____
William C. Jeanney, Esq.

**CERTIFICATE OF SERVICE**

Pursuant to N.R.C.P. 5(b), I certify that I am an employee of BRADLEY, DRENDEL & JEANNEY, and that on this date, I served a true and correct copy of the foregoing on the party(s) set forth below by:

___ Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices.

___ Personal Delivery

_x_ All parties signed up for electronic filing have been served electronically, all others have been served by placing a true copy thereof in a sealed envelope placed for collecting and mailing in the United States mail, at Reno, Nevada, postage prepaid, following ordinary business practices.

addressed as follows:

Michael W. Melendez, Esq.
Cozen O'Connor
575 Market Street, Suite 2200
San Francisco, CA 94105
    Attorneys for Plaintiff MedChoice Risk Retention Group, Inc.

Shauna Martin Ehlert, Esq.
Cozen O'Connor
999 Third Avenue, Suite 1900
Seattle, WA 98104
    Attorneys for Plaintiff MedChoice Risk Retention Group, Inc.

Damon Schuetze, Esq.
Schuetze & McGaha
601 South Rancho Drive, Suite C-20
Las Vegas, NV 89106
    Attorneys for Plaintiff MedChoice Risk Retention Group, Inc.

Thomas J. Doyle, Esq.
Schuering Zimmerman Scully & Doyle, LLP
400 University Avenue
Sacramento, CA 95825
Attorney for: Robert G. Rand, M.D.,
    Rand Family Care, LLC

DATED this 20th day of September, 2016.

*/s/ Reva S. Archer*
Reva S. Archer